UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMUEL A. BURNETTE,

      Petitioner,

  v.            Case No. 25-CV-335

WARDEN ELIZABETH TEGELS,

      Respondent.

## DECISION AND ORDER

**1. Background**

  Following a jury trial at which he represented himself, Samuel A. Burnette was convicted of sexual assault of a child. (ECF No. 14-1 at 2.) After unsuccessfully challenging his conviction in the circuit court (ECF No. 14-9), court of appeals (ECF No. 14-2), and the Wisconsin Supreme Court (ECF No. 14-3), Burnette filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) He presents seven claims in his petition: (1) the trial court improperly admitted evidence over his claim of spousal privilege; (2) the trial court improperly admitted DNA evidence; (3) his right to a speedy trial was violated; (4) the trial court lost personal jurisdiction over him when it failed to hold a timely preliminary hearing; (5) he "was placed at a disadvantage as a Pro Se litigant"; (6) the victim's testimony differed from other evidence presented at trial; (7) the judge should have recused herself because she was

a party in a lawsuit that Burnette filed; and (8) the court should not have instructed the jury that it could consider Burnette's return to Texas as evidence of guilt.

## 2. State Law Claims

Under 28 U.S.C. § 2254(a), a federal court can grant habeas relief only if a person is "in custody pursuant to the judgment of a State court … in violation of the Constitution or laws or treaties of the United States." Thus, a federal court can consider only claims that allege violations of the Constitution or other federal law. A federal court cannot grant habeas relief based on a violation of state law. *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Federal habeas corpus relief does not lie for errors of state law." (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Burnette's claims regarding spousal privilege, *see Schmidt v. Foster*, No. 18-CV-29, 2019 U.S. Dist. LEXIS 144900, at *14 (E.D. Wis. Aug. 26, 2019), and the timeliness of his preliminary hearing, *see Tyra v. Ball*, No. 24-cv-1104-pp, 2025 U.S. Dist. LEXIS 6833, at *11 (E.D. Wis. Jan. 14, 2025), are matters of state law and thus not matters a federal court can address in a habeas petition. Accordingly, the court will deny Burnette's first and fourth claims.

## 3. Adequate and Independent State Law Grounds

As to Burnette's fifth, sixth, seventh, and eighth claims, the respondent argues that Burnette failed to fairly present these claims to the court of appeals and the court of appeals rejected them as inadequately developed.

The court of appeals did not address any of these claims. Instead, it dropped a footnote: "To the extent we have not addressed a matter raised in Burnette's briefs,

those arguments were either unpreserved, *see State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727, or are insufficiently developed on appeal, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992)." (ECF No. 14-2, fn. 1.)

Under what is referred to as the adequate and independent state law grounds exception, a federal court cannot grant habeas relief when the state court denied the petitioner's claim for a reason arising under state law, unrelated to the merits of the constitutional claim. *See Moore v. Wisconsin*, No. 24-cv-603-pp, 2025 U.S. Dist. LEXIS 103908, at *10 (E.D. Wis. May 30, 2025). "The ground is adequate if it is 'firmly established and regularly followed as of the time when the procedural default occurred.'" *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021) (quoting *Richardson v. Lemke*, 745 F.3d 258, 271 (7th Cir. 2014)). "It is independent of federal law if it does not depend on the merits of the petitioner's claim." *Id.* (citing *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam)).

A state court's finding that a defendant failed to develop an argument under *Pettit*, *see Knipfer v. Wis. AG*, No. 20-cv-176-bbc, 2020 U.S. Dist. LEXIS 74237, at *3 (W.D. Wis. Apr. 28, 2020) (citing *Kerr v. Thurmer*, 639 F.3d 315, 323 (7th Cir. 2011), *vacated on other grounds, Thurmer v. Kerr*, 566 U.S. 901 (2012)), or that he failed to preserve an argument by presenting it in the trial court as required under *Huebner*, *see Ardell v. Kaul*, No. 19-CV-1097, 2021 U.S. Dist. LEXIS 92852, at *13 (E.D. Wis. May 14, 2021); *Murray v. Boughton*, No. 20-CV-185, 2020 U.S. Dist. LEXIS 236066, at *17 (E.D. Wis. Dec. 15, 2020); *Powell v. Hermans*, No. 15-CV-640, 2019 U.S. Dist. LEXIS 44752, at *19 (E.D. Wis. Mar. 19, 2019); *Turner v. Pollard*, No. 13-CV-731-

JPS, 2014 U.S. Dist. LEXIS 154456, at *17 (E.D. Wis. Oct. 31, 2014), both constitute adequate and independent state law grounds, thus precluding federal habeas relief.

Even if the adequate and independent state law doctrine did not bar consideration of these claims, each would fail on its merits.

Burnette has failed to present evidence that the problems he had as a pro se defendant in obtaining a transcript of his preliminary hearing undermined his ability to defend himself or to appeal his conviction. *See Pope v. Kemper,* 689 F. Supp. 3d 657, 670 (E.D. Wis. 2023) (citing *Britt v. North Carolina,* 404 U.S. 226, 227, n.1 (1991); *Griffin v. Illinois,* 351 U.S. 12 (1956)). Insofar as he is arguing that he was denied the effective assistance of counsel, "a defendant who exercises his right to appear *pro se* 'cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel.'" *McKaskle v. Wiggins,* 465 U.S. 168, 177, n.8 (1984) (quoting *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975)).

There are routinely discrepancies in evidence; it is the role of the jury to resolve such conflicts. Insofar as Burnette may be alleging that the evidence was insufficient to sustain his conviction, *see Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), he has failed to satisfy his burden. Burnette's girlfriend testified that he admitted to the crime in person and by text message.

Burnette naming the trial court judge as a defendant in a civil suit did not mandate her recusal. *See In re Taylor,* 417 F.3d 649, 652 (7th Cir. 2005). Burnette's suit was dismissed soon after it was filed and before the complaint was ever served

on the judge. Mandating recusal under such circumstances would invite litigants to file frivolous suits as a means of judge shopping. *See id*. Moreover, Burnette's suit could not have affected the judge because it is well established that judges are absolutely immune from such suits for damages related to their judicial actions. *See Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Forrester v. White*, 484 U.S. 219, 225-29 (1988)).

Finally, Burnette has failed to show that there was anything improper in the court instructing the jury: "Evidence has been presented relating to the defendant's conduct after the alleged crime was committed. Whether the evidence shows a consciousness of guilt, and whether consciousness of guilt shows actual guilt, are matters exclusively for you to decide." (ECF Nos. 14-12 at 80-81; 16-1 at 47.) Burnette argues that the instruction, Wisconsin Criminal Pattern Jury Instruction 172, was improper because he did not flee after the offense; he merely returned home to Texas. But that is a matter of argument. It was up to the jury to decide what, if any, inference to draw from Burnette's return to Texas. The jury instruction did not mandate that the jury infer guilt. There was nothing improper in the instruction. *See Martinez v. McCaughtry*, No. 97-C-1081, 1998 U.S. Dist. LEXIS 24951, at *15 (E.D. Wis. May 8, 1998) (discussing *United States v. Clark*, 45 F.3d 1247 (8th Cir. 1995)).

Thus, the court turns to the two claims that are properly before the court: (2) the trial court improperly admitted DNA evidence; (3) his right to a speedy trial was violated.

4. **Applicable Law**

Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a federal court may grant a state inmate habeas relief under 28 U.S.C. § 2254 only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

This standard is "difficult to meet" and "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington* v. *Richter*, 562 U.S. 86, 102 (2011); *Woodford* v. *Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The federal court must be convinced that the state court's decision was not merely wrong but so wrong that no reasonable fair-minded judge could have reached the same conclusion. *See Renico v. Lett*, 559 U.S. 766, 773 (2010). To prove that a decision was contrary to clearly established federal law requires the petitioner to point to a decision of the United States Supreme Court where the Court addressed essentially the same question under the same circumstances and reached a different conclusion. *See Shoop v. Cunningham*, 143 S. Ct. 37, 41-42 (2022).

5. **Analysis**

   **5.1. DNA Evidence**

Burnette's sexual assault conviction stemmed from an incident that occurred at a hotel on a road trip involving Burnette, his girlfriend, two of the girlfriend's

grandchildren, and Burnette's son. In the middle of the night, Burnette went from his bed that he shared with his girlfriend and to the bed that all the children shared and sexually assaulted his girlfriend's granddaughter. A crime lab analyst testified regarding a mix of DNA found near the waistband of the victim's underwear. The analyst testified that it was very likely that Burnette's DNA was included in that mixture. (ECF No. 14-11 at 91.)

There was also a second portion of the victim's underwear—the inside of the underwear—where the DNA analyst initially testified there was "moderate support for exclusion" of Burnette as a contributor to the mixture of DNA identified. (ECF No. 14-11 at 95.) After the analyst testified, she returned to the crime lab and consulted with her colleagues and concluded that her characterization of the test results as showing "moderate support for exclusion" was no longer the accurate scientific terminology. The results should have been characterized as "uninformative." The underlying test results were sound; it was merely the label that applied or category that the results fell into that was incorrect. (ECF No. 14-12 at 5-6.) The court allowed the state to reopen its case and have the analyst make this correction. (ECF No. 14-12 at 10-11.)

The precise nature of Burnette's argument regarding the DNA evidence is unclear. His arguments are largely undeveloped and tend to focus on alleged violations of state law. (ECF No. 16 at 7-8.) He tends to offer a scattershot attack on the DNA evidence ranging from arguing that the state should have conducted further testing of the underwear, it failed to preserve exculpatory evidence, the DNA evidence

should have been excluded because of errors in the report, and his right to confrontation was violated by the analyst's testimony.

The court of appeals addressed only Burnette's claim that these circumstances rose to the level of a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). (ECF No. 14-2, ¶¶ 16-17.) The court noted that Burnette failed to show that additional testing, and specifically testing as to whether Burnette's son was the source, would be relevant when Burnette had admitted to his girlfriend that he touched the victim and the DNA analyst addressed the possibility of Burnette's son being the source and testified "it would still be one quadrillion times more support for it being DNA from Mr. Burnette than it would be from being a child of Mr. Burnette." (ECF No. 14-2, ¶ 17; *see also* ECF No. 14-11 at 98.)

In light of Burnette's pro se status, the court construes his arguments broadly and thus will address each in turn.

*Brady* bars the prosecution from withholding from the defendant favorable material evidence. *Bryant v. Brown*, 873 F.3d 988, 998 (7th Cir. 2017). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different. *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Burnette's claims do not appear to fit the *Brady* framework. *Brady* does not require the prosecution to perform any sort of test or investigation on behalf of defendant. *See United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("This court has held many times that *Brady* does not require the government to gather

information or conduct an investigation on the defendant's behalf."). Nor does *Brady* broadly require the prosecution to preserve what may prove to be relevant evidence. *See Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004).

Rather, it is from *Arizona v. Youngblood*, 488 U.S. 51 (1988), that there emerged the principle that the state violates the defendant's right to due process if it, in bad faith, fails to preserve potentially useful evidence. *Id.* at 58. However, Burnette's claim fails because he offers nothing to suggest that any evidence was destroyed in bad faith, *i.e.*, that investigators failed to preserve the evidence despite their own "conduct indicat[ing] that the evidence could form a basis for exonerating the defendant." *Id.*

Insofar as Burnette is alleging that the state violated his right to due process by not granting his motion to perform certain DNA testing, the Supreme Court has never held that a defendant is entitled to DNA testing on demand. *See Kocielko v. Superintendent*, No. 3:15-CV-436-RLM-MGG, 2018 U.S. Dist. LEXIS 58938, at \*17 (N.D. Ind. Apr. 5, 2018). Rather, the state need only provide a fair trial.

Burnette has failed to demonstrate that any additional DNA testing was necessary to ensure a fair trial. It is unclear what he hoped additional DNA testing would prove. This was not a case where there was a question of whether someone else had been the perpetrator; Burnette's defense was that the crime did not occur. In fact, he even acknowledged that he may have touched the victim. He simply argued that the touching was non-sexual and incidental to adjusting the tangle of blankets that

he found when he woke up in the middle of the night. Thus, identification of the unidentified DNA on the victim's underwear would not have been relevant.

Perhaps Burnette hoped that further testing would have revealed that the DNA identified on the victim's underwear was from his son, who had been sharing the bed with Burnette and the victim. Thus, Burnette's son had incidental contact with the victim while sleeping and the similarity to Burnette's DNA was simply a result of the genetic relationship between father and son. But the expert testified that she considered this possibility and testified that it was unlikely; there was only a one in a quadrillion chance of Burnette's son being the source of the DNA. (ECF No. 14-11 at 98.) Under the circumstances, the denial of additional DNA testing did not result in a denial of due process; Burnette has failed to identify how further DNA testing likely would have made any difference, particularly in light of the other compelling evidence against him including his admission to his girlfriend.

Burnette also argues that all the DNA evidence should have been excluded because of errors in the analyst's report. But his argument focuses on how he believes that allowing the analyst to return to the stand to correct the error allegedly violated state law. (ECF No. 16 at 8.) Again, a federal court cannot grant habeas relief under § 2254 for violations of state law.

Finally, Burnette makes a passing reference to *Crawford v. Washington*, 541 U.S. 36 (2004), and his right to confrontation. (ECF No. 16 at 9.) The argument is not developed but the best the court can glean is that Burnette argues that, because the witness who testified at trial was not the analyst who tested the evidence for DNA,

10
Case 1:25-cv-00335-BBC     Filed 01/05/26     Page 10 of 16     Document 24

the witness violated the confrontation clause by offering an opinion that was different from that contained in the non-testifying analyst's report. (ECF No. 16 at 9.)

The confrontation clause of the Sixth Amendment prohibits the government from introducing conclusions drawn from forensic tests as substantive evidence without presenting the analyst as a live witness subject to cross examination. *United States v. Maxwell*, 724 F.3d 724, 726 (7th Cir. 2013) (citing *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009)). However, it is common that the crime lab analyst who performed the specific tests will be unavailable to testify. *See Maxwell*, 724 F.3d at 726.

The solution is to have a different analyst testify as to the conclusions she draws from the testing analyst's raw data. *See Maxwell*, 724 F.3d at 726-27. The raw data is not testimonial, and so long as the person drawing the conclusion is available for cross-examination, there is no confrontation clause problem. *See id*. The testifying analyst's conclusions will generally coincide with the testing analyst's conclusions, but so long at the testifying witness is offering her own conclusions and not merely acting as a mouthpiece for the absent expert, the absence of the testing analyst does not offend the confrontation clause.

Burnette's complaint that the witness's testimony differed from the report—specifically that the data supported the conclusion that the result was "uninformative" rather than offering "moderate support for exclusion" (ECF No. 14-12 at 6)—is the opposite of a confrontation clause problem. Rather than parroting the report, the witness offered her independent conclusion based on the raw data, and in

this instance, that conclusion differed from what the non-testifying analyst wrote. A confrontation clause problem would have arisen if the witness did what Burnette seems to argue she should have done—testify as to the conclusions in the report rather than the conclusions she drew from the data contained in the report.

In sum, Burnette has failed to show that anything regarding the admission, testing, or access to DNA evidence violated federal law, much less that the state court's conclusion was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Consequently, the court must deny Burnette relief as to this category of claims.

### 5.2. Speedy Trial

Burnette made his initial appearance on March 30, 2020. (ECF No. 1 at 9.) His trial began on June 1, 2021. (ECF No. 14-10.) He argues that this delay of 14 months violated his right to a speedy trial. (ECF No. 16 at 9-10.)

In Wisconsin, there is both a statutory, *see* Wis. Stat. § 971.10, and as incorporated by the due process clause of the Fourteenth Amendment, a federal constitutional right to a speedy trial, *see* U.S. Const. Amend. VI. Much of Burnette's brief addresses his statutory right to a speedy trial under Wisconsin law. (ECF No. 16 at 9-10.) The court, however, can consider only the constitutional right.

The constitutional right to a speedy trial is "slippery" and "amorphous." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). In assessing whether the right has been violated the court balances the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "The length of the

delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*.

Depending on the nature of the charges, any delay of more than a year may be presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). The court of appeals, however, found that the delay in Burnette's trial was not presumptively prejudicial because the state was ready to proceed to trial on September 1, 2020. (ECF No. 14-2, ¶ 7.) The trial was delayed only because Burnette chose to fire his attorney because that attorney refused to file an interlocutory appeal that counsel regarded as frivolous. (ECF No. 14-2, ¶ 7.)

The court of appeals reasonably applied federal law to reject Burnette's speedy trial claim. The state was ready to bring him to trial on September 1, 2020, but Burnette's decision to fire his attorney required an adjournment. In light of these circumstances, the fact that it took 14 months for his trial to ultimately begin was not presumptively prejudicial.

Burnette argues that these delays should not be attributed to him because he asked to proceed pro se on August 30, 2020, but it was not until January 15, 2021, that the court finally approved his request. (ECF No. 23 at 13.) This, however, does not change the fact that the court had to adjourn the September 1, 2020, trial because Burnette chose to fire his attorney just a few days before trial. *See* Racine Cnty. Cir. Ct. Case No. 2020CF324 (available at https://wcca.wicourts.gov/). In his August 30, 2020, letter, Burnette was not saying that he was ready to represent himself at trial

on September 1, 2020; the court had already adjourned the trial by the time of his letter. (ECF No. 23-1 at 27.) Rather, Burnette said only that he was intending to proceed pro se with the interlocutory appeal that his attorney deemed frivolous, and only then until the court of appeals appointed counsel for him. (ECF No. 23-1 at 27.) The court scheduled a status conference for October 12, 2020, *see* Racine Cnty. Cir. Ct. Case No. 2020CF324, but Burnette did not appear, having contracted Covid while at the jail (ECF No. 23 at 13). It was not until a November 30, 2020, status conference that Burnette stated he wished to represent himself at trial, albeit with standby counsel of his choice. *See* Racine Cnty. Cir. Ct. Case No. 2020CF324. The court explained that a pro se defendant does not get to choose his appointed standby counsel and set a subsequent conference for January 15, 2021, to allow time for the appointment of standby counsel. *See* Racine Cnty. Cir. Ct. Case No. 2020CF324

Even if the court were to find delay of 14 months presumptively prejudicial so as to open the door to consideration of the remaining factors, Burnette's claim would fail. Burnette demanded a speedy trial, but there is no evidence that the delay prejudiced him in his defense. And the reason for the delay strongly tips the balance against finding that his right to a speedy trial was violated.

The offense occurred on March 12, 2020, and Burnette made his initial appearance on March 30, 2020. This was just as the Covid-19 pandemic shut down the country, including the courts, creating a backlog that took courts years to recover from. That it took 14 months for a serious felony case to come to trial during the height of the pandemic was reasonable, particularly when considering that this case

14
Case 1:25-cv-00335-BBC   Filed 01/05/26   Page 14 of 16   Document 24

included scientific evidence and out-of-state witnesses. In addition, considering the delays associated with Burnette firing counsel and electing to proceed pro se, he has fallen far short of demonstrating that the court of appeals acted contrary to clearly established federal law or relied on an unreasonable determination of the facts when it denied his speedy trial claim. Therefore, the court must deny Burnette's petition.

## 6. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, Rules Governing Section 2254 Cases. The court may issue a certificate of appealability 'only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires more than showing merely that an appeal would not be frivolous. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). But this standard does not require that the applicant to show that some judges would grant the petition. *Id.* Rather, when the court has denied the petition on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court concludes that Burnette has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Burnette's petition for a writ of habeas corpus is denied. The court declines to issue a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 5th day of January, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge